No. 24-1275

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

Tayvin Galanakis,

*Plaintiff-Appellee,*

v.

City of Newton, Iowa, Nathan Winters, and Christopher Wing,

*Defendants-Appellants,*

---

On Interlocutory Appeal from the
United States District Court for the Southern District of Iowa
The Hon. Stephen H. Locher, District Judge
Case No. 4:23-cv-00044-SHL-SBJ

---

### REPLY BRIEF

---

Nicholas F. Miller,
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
T: (515) 274-1450
F: (515) 274-1488
nick.miller@brickgentrylaw.com

*Attorneys for Defendants-Appellees*
*City of Newton, Iowa, Nathan Winters,*
*and Christopher Wing*

# TABLE OF CONTENTS

ARGUMENT ............................................................................. 6

I. Given the Existing Precedents, a Reasonable Officer Could Believe that There was a Fair Probability or a Substantial Chance Galanakis Operated His Vehicle While Intoxicated in Violation of Iowa Code § 321J.2 .................................................. 8

    A. Under the District Court's View of the Evidence Favoring Galanakis, Officer Winters and Lieutenant Wing did not Violate the Fourth Amendment.............................................. 9

    B. Then-Existing Precedent Did Not Put Every Reasonable Officer on Notice that Arresting Galanakis Violated the Fourth Amendment............................................................. 13

II. The Critical Error in Galanakis's and the District Court's Analyses is They Improperly Focused on How a Jury Might View the Indicators of Intoxication as Having Innocent Explanations and Then Discounted Them ...................................................... 23

III. Galanakis and the District Court Made Several Other Errors in Their Analyses that The Court Must Correct..................................................................................27

    A. Galanakis Incorrectly Contends that the Question of Whether Officer Winters and Lieutenant Wing Reasonably Concluded Probable Cause Existed Requires a Credibility Assessment .......................................................................28

    B. Galanakis and the District Court Overemphasized the PBT Result ...................................................................................29

    C. Galanakis Continues to Improperly Rely on Alleged Subjective Motivations and Post-Arrest Facts to Oppose Qualified Immunity and Summary Judgment ..................30

Appellate Case: 24-1275    Page: 2    Date Filed: 07/23/2024 Entry ID: 5416250

D. Galanakis Incorrectly Argues that Officer Winters and Lieutenant Wing are Interpreting the Facts in Their Favor....................................................................32

IV. Galanakis Failed to Address the Argument that the District Court's View of Some Material Facts Blatantly Contradicts the Record ...................................................................34

CONCLUSION ........................................................................35

Appellate Case: 24-1275    Page: 3    Date Filed: 07/23/2024 Entry ID: 5416250

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Anderson v. Creighton,*
   483 U.S. 635, 643–644 (1987) ………………………………………………….9

*Bell v. Neukirch,*
   979 F.3d 594 (8th Cir. 2020)……………………………………………….6, 9

*Braun v. Village of Palatine,*
   56 F.4th 542, 550 (7th Cir. 2022)……………………………………………31

*Brown v. City of St. Louis,*
   40 F.4th 895 (8th Cir. 2022) …………………………………………….Passim

*District of Columbia v. Wesby,*
   583 U.S. 48 (2018)……………………………………………………….Passim

*Donahue v. Wihongi,*
   948 F.3d 1177 (10th Cir. 2020)……………………………………….22, 23

*Gilmore v. City of Minneapolis,*
   837 F.3d 827 (8th Cir. 2016)…………………………………………………32

*Gutierrez v. Kermon,*
   722 F.3d 1003 (7th Cir. 2013)………………………………………………21

*Hosea v. City of St. Paul,*
   867 F.3d 949 (8th Cir. 2017)………………………………………….32, 33

*Illinois v. Gates,*
   462 U.S. 213 (1983)……………………………………………………..Passim

*Kelsay v. Ernst,*
   933 F.3d 975 (8th Cir. 2019) (en banc)……………………………...Passim

*Kent v. Katz,*
   312 F.3d. 568 (2d Cir. 2002)…………………………………..…………21, 22

4

*Lambert v. City of Dumas,*
187 F.3d 931 (8th Cir. 1999)……………………………...……15, 18, 19

*L.G. v. Columbia Pub.,*
990 F.3d 1145 (8th Cir. 2021) ............................................................. 19

*Mullenix v. Luna,*
577 U.S. 7 (2015)........................................................................15, 17

*Scheffler v. Lee,*
752 F. App'x 239 (6th Cir. 2018)…………………………....20, 21

*Sherbrooke v. City of Pelican Rapids,*
577 F.3d 984 (8th Cir. 2009) ............................................................. 13

*United States v. Barry,*
394 F.3d 1070 (8th Cir. 2005) ………………………..…………..12

**Statutes**

Iowa Code § 321J.2.........................................................................Passim

Iowa Code § 124.204............................................................................30

**Other Authorities**

U.S. Const. amend. IV....................................................................Passim

5

# ARGUMENT

Officer Winters and Lieutenant Wing are most readily entitled to qualified immunity under the clearly established prong of the analysis.

In light of the existing precedents at the time, a reasonable officer easily could have believed there was a fair probability or a substantial chance, and therefore probable cause, that Plaintiff-Appellee Tayvin Galanakis operated his vehicle while intoxicated. *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020). Among other things, Galanakis blatantly failed two different field sobriety tests and struggled to produce his registration and proof of insurance. Based on this, a reasonable officer would have no trouble concluding there was probable cause to believe Galanakis was intoxicated. Neither Galanakis nor the district court identified any authorities suggesting otherwise. Therefore, qualified immunity on Galanakis's Fourth Amendment unreasonable arrest claim and his Iowa false arrest claim is appropriate. *See Brown v. City of St. Louis*, 40 F.4th 895, 903 (8th Cir. 2022) (explaining that even when "officers act on a mistaken belief that probable cause exists, if that mistake is objectively reasonable, *arguable* probable cause exists" and qualified immunity is appropriate).

6

The critical error in both Galanakis's and the district court's analyses is they hyperfocused on how a jury could resolve certain disputed facts, like whether Galanakis failed the field sobriety tests and struggled with his documents for innocent reasons, which misses the ultimate qualified immunity question. The question is not whether the field sobriety tests and trouble producing documents were indicative of intoxication *as a factual matter*, the question is whether a reasonable officer could have *believed* these things supported a fair probability or a substantial chance that Galanakis was intoxicated. *See Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019) (en banc) (clarifying that the "relevant question" for qualified immunity is not how a jury could resolve certain disputed facts but whether a reasonable officer could believe they were acting lawfully); *see also Brown*, 40 F.4th at 903. This is a question of law subject to *de novo* review by this Court, and the answer is: yes, a reasonable officer could easily conclude there was a fair probability or a substantial chance that Galanakis was intoxicated, especially after he failed two field sobriety tests. *See id*.

In his brief, Galanakis attempts to defend the district court's flawed analysis. But for the reasons discussed below, Galanakis's arguments are

7

misguided and neglect several important qualified immunity and Fourth Amendment principles. Under a proper analysis, Officer Winters and Lieutenant Wing are entitled to qualified immunity, and the City of Newton is, in turn, also entitled to immunity.

## I. Given the Existing Precedents, a Reasonable Officer Could Believe that There was a Fair Probability or a Substantial Chance Galanakis Operated His Vehicle While Intoxicated in Violation of Iowa Code § 321J.2

In their qualified immunity analyses, Galanakis and the district court lost sight of the central question: whether a reasonable officer could believe that there was a fair probability or a substantial chance Galanakis was intoxicated in light of then-existing precedent. They instead focused on how a jury might view the indicators of intoxication, like failed field sobriety tests, as having innocent explanations and then improperly *discounted* those indicators in the analysis. Under the correct analysis, it is apparent that qualified immunity is appropriate.

The central question posed by the assertion of qualified immunity is whether, in light of existing precedent, an objective reasonable officer could believe they acted lawfully. *See Kelsay*, 933 F.3d at 981 (citing *Anderson v. Creighton*, 483 U.S. 635, 643–644 (1987)); *see also Brown*, 40 F.4th at 901, 902–903. So in the warrantless arrest context, the question

8

is whether, given existing precedents, an objective reasonable officer could believe there was a "fair probability" or a "substantial chance," and therefore probable cause, that a crime was being committed. *See id*.; *Bell*, 979 F.3d at 603 (quoting *Gates*, 462 U.S. at 243 n.13). If so, then "*arguable* probable cause exists" and qualified immunity should be granted. *Brown*, 40 F.4th at 901.

When all the circumstances leading up to Galanakis's arrest are considered in light of the then-existing precedents, an objective reasonable officer could easily reach the conclusion that there was a fair probability or a substantial chance that Galanakis drove while intoxicated. This is true even under the district court's view of the facts in Galanakis's favor.

## A. Several Facts Would Lead a Reasonable Officer to Believe There was a Fair Probability or a Substantial Chance Galanakis was Intoxicated

When Officer Winters approached Galanakis's driver-side window after stopping his vehicle, Galanakis was chewing gum, and at least three air fresheners hung from his rear-view mirror. App. 457; R. Doc. 77, at 3; App. 298, at 16:25; R. Doc. 4-3, at 6. Then, when Officer Winters asked Galanakis for his license, registration, and proof of insurance, Galanakis

9

could not produce them without help to identify them and recognize which copies were expired. Holding multiple registration documents, Galanakis asked Officer Winters "is it one of these right here?" App. 457; R. Doc. 77, at 3. After Officer Winters said "that's the registration," Galanakis replied, "I just got a new one so I don't know which one's the old one—I'll just give you both of them." *Id.* Only after Officer Winters took the current registration did Galanakis recognize the expired registration. *Id.* Next, Officer Winters asked Galanakis again for proof of insurance, and Galanakis asked back "would it be that white card?" *Id.*; App. 298, at 16:32–17:25; R. Doc. 4-3, at 6. After Officer Winters said "it could be," Galanakis held up a small white card and did not recognize it was expired until Officer Winters commented "that's one that expired in '21." *Id.*

Most importantly, though, Galanakis failed two different field sobriety tests, a walk-and-turn test and a one-leg stand test. App. 458–460; R. Doc. 77, at 4–6. On both tests, Galanakis was unable to follow basic instructions just seconds after receiving them. *Id.* On the first test, he was unable to count 9 steps, he did not remember to count his steps out loud, and he misremembered when to turn—he told Officer Winters

10

"I thought you were going to tell me when to turn," which completely contradicted Officer Winters's instructions. *Id*. On the second test, Galanakis again did not remember to count out loud and misremembered how to count, despite receiving the instructions twice. *Id*.; App 298, at 27:30–29:50; R. Doc. 40-3, at 6. And before performing the second, test Galanakis taunted Officer Winters with comments like "you a rookie bro," "is this your first year?" and "how many false accusations you got?" App. 459; R. Doc. 77, at 5.

On top of all this, i.e., Galanakis's gum, air fresheners, trouble producing documents, taunting, and failed field sobriety tests, Galanakis also provided inconsistent answers to Officer Winters's investigatory questions and responded oddly to Officer Winters's question about smoking marijuana. *See* Appellants' Br., at 42–43, 47–48. Specifically, when Officer Winters asked Galanakis about the last time he smoked marijuana, Galanakis oddly gazed off for 8–10 seconds before saying "I do not remember that." App. 461; R. Doc. 77, at 7.

Based on all this, it was objectively reasonable to conclude that there was a fair probability or a substantial chance that Galanakis was intoxicated. It was objectively reasonable to view Galanakis's gum and

Appellate Case: 24-1275    Page: 11    Date Filed: 07/23/2024 Entry ID: 5416250

air fresheners as "possible cover-up odors" used to mask the smell of intoxicants, like marijuana. App. 277, at ¶ b); R. Doc. 40-3, at 82; *see United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005). It was also objectively reasonable to view Galanakis's trouble producing his registration and proof of insurance as an indicator of intoxication. *See Brown*, 40 F.4th at 900 (stating the probable cause standard "afford[s] officers substantial latitude in interpreting and drawing inferences from factual circumstances."). And most of all, it was certainly objectively reasonable to view Galanakis's failed field sobriety tests as strong indicators of intoxication because they demonstrate Galanakis lacked the cognitive ability to perform psychophysical sobriety tests. App. 274–280; R. Doc. 40-3, at 79–85; *see Brown*, 40 F.4th at 900; *Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984, 986–988 (8th Cir. 2009). On their own, these circumstances were more than enough to support the reasonable belief that there was a fair probability or substantial chance that Galanakis was intoxicated. But when coupled with the other circumstances, including Galanakis's traffic violations, his taunting, his inconsistent answers to investigatory questions, and his odd response to Officer Winters's question about the last time he smoked marijuana, *any*

12

reasonable officer could easily conclude there was a fair probability or substantial chance Galanakis was intoxicated.

## B. Then-Existing Precedent Did Not Put Every Reasonable Officer on Notice that Arresting Galanakis Violated the Fourth Amendment

Neither Galanakis nor the district court identified any then-existing precedents that indicated Galanakis's arrest violated the Fourth Amendment.

To defeat qualified immunity, Galanakis must show that Officer Winters's and Lieutenant Wing's probable cause conclusion was objectively *un*reasonable in light of existing clearly established precedent. *See Wesby*, 583 U.S. at 68 (granting qualified immunity because "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests."). To do that, Galanakis must identify a clearly established "legal principle" that is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 63 (cleaned up). He must then show that the legal principle clearly prohibited Officer Winters and Lieutenant Wing from arresting Galanakis because probable cause to believe he was intoxicated was lacking given the particular

13

circumstances. *Wesby*, 583 U.S. at 63 ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.").

It is somewhat difficult to understand the specific legal principle Galanakis is advancing beyond the Fourth Amendment's general probable cause requirement. Before the district court, he advanced the general principle that "[a]bsent probable cause after field testing, it is clearly established that arresting Tayvin violated the Fourth Amendment." App. 306; R. Doc. 54-1, at 8 (citing *Lambert v. City of Dumas*, 187 F.3d 931, 955 (8th Cir. 1999)). And on appeal, he continues to advance that same general principle, asserting "[t]he Fourth Amendment includes the right to be free from arrest without probable cause." *See* Appellee Br., at 22 (quoting *Lambert*, 187 F.3d at 935). Yet general principles, like the Fourth Amendment's probable cause requirement, are not sufficient to define clearly established law for purposes of qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts not to define clearly established law at a high level of generality," including "in the Fourth Amendment context" where "specificity is especially important."). So Galanakis's repeated

14

assertions that it is clearly established that the Fourth Amendment prohibits arrests without probable cause are not helpful. *See id*.[1]

Other than the Fourth Amendment's probable cause requirement, it is unclear what specific legal principle Galanakis is advancing. Ostensibly, he contends it is clearly established that probable cause to believe a person illegally drove while intoxicated is lacking when there are no observable indicators of intoxication. *See* Appellee Br., at 22–26 ("It is clearly established that in the absence of physical or mental impairment due to intoxication, no reasonable officer would objectively believe probable cause existed."). But this is no more specific than the general principle that the Fourth Amendment prohibits arrests without probable cause. That is, stating an officer cannot arrest someone for driving while intoxicated when there are no indications the person is intoxicated is not much different than stating an officer cannot arrest someone without probable cause. It is a general principle that lacks

---

[1] A specific legal principle grounded in controlling authority or a robust consensus of persuasive authorities with similar facts is not necessary in the "rare obvious case" where the unlawfulness of the officer's conduct was sufficiently clear on its own. *Brown*, 40 F.4th at 899. However, Galanakis has not argued this is a "rare obvious case."

Appellate Case: 24-1275     Page: 15     Date Filed: 07/23/2024 Entry ID: 5416250

specificity and is not helpful except in the rare obvious case, which this case is not. *See Mullenix*, 577 U.S. at 12.

To illustrate, Officer Winters and Lieutenant Wing observed Galanakis fail two different field sobriety tests. App. 458–460; R. Doc. 77, at 4–6. Before that, they observed Galanakis struggle to produce unexpired copies of his registration and proof of insurance without Officer Winters's help. App. 457; R. Doc. 77, at 3. In addition to this, Galanakis was chewing gum, he had several air fresheners, he taunted Officer Winters, and he provided odd and inconsistent answers to Officer Winters's investigatory questions. App. 457–461; R. Doc. 77, at 3–7; App. 298, at 16:25; R. Doc. 4-3, at 6. So to the extent Galanakis asserts that it is clearly established that probable cause is lacking when there are no observable indicators of intoxication, this principle is far too general and inapplicable to the particular facts of this case. *See Wesby*, 583 U.S. at 63 In fact, there were several things that a reasonable officer in Officer Winters's or Lieutenant Wing's positions would have observed that could have easily been viewed as indicators of intoxication. *See Kelsay*, 933 F.3d at 981 (explaining qualified immunity accounts for an officer's reasonable

16

understanding of the circumstances); *see also Brown*, 40 F.4th at 903 (same).

Galanakis cited *Lambert v. City of Dumas* as the controlling authority supporting his proffered general legal principle and says *Lambert* involved facts similar to this one. *See* Appellee Br., at 22–23 (citing 187 F.3d 931, 935 (8th Cir. 1999)). However, *Lambert* is easily distinguishable. There, the Court denied qualified immunity to officers because they arrested someone for public intoxication who was not visibly intoxicated and who otherwise displayed no signs of intoxication. *See id.* at 933–935. The officers in *Lambert* never subjected the arrestee to field sobriety tests, and based on the Court's review of the record, the arrestee exhibited no signs of intoxication. *See id.* Unlike in *Lambert*, Galanakis needed help identifying unexpired versions of his registration and insurance, and he failed two field sobriety tests. App. 457–460; R. Doc. 77, at 3–6. Galanakis also did other things that a reasonable officer could view as signs of intoxication. Accordingly, *Lambert* does not fit the facts of this case, and it did not put every reasonable officer on notice that arresting someone in Galanakis's circumstances clearly violated the

17

Fourth Amendment. *See Wesby*, 583 U.S. at 63. Galanakis's reliance on *Lambert* is therefore misguided.

Galanakis also cited several persuasive authorities that, like *Lambert*, are easily distinguishable and did not put every reasonable officer on notice that arresting a person in Galanakis's circumstances violated the Fourth Amendment. *See* Appellee Br., at 23–26. He first copied the district court's citation of a series of Iowa Court of Appeals and Iowa Supreme Court cases. However, Galanakis did not respond to the argument that these cases cannot constitute a robust consensus of persuasive authorities for purposes of the qualified immunity analysis. *See* Appellants' Br., at 61–62 (citing *L.G. v. Columbia Pub. Schs.*, 990 F.3d 1145, 1150 (8th Cir. 2021)). Nor did Galanakis explain how these cases are factually similar to this case. In fact, they are not factually similar. Only one of these cases involved failed field sobriety tests, and in that one case, the court found probable cause existed, which would suggest that reasonable officers can count failed field sobriety tests toward probable cause to believe a person is intoxicated. *See* Appellants' Br., at 63–64. Similarly, in the rest of these cases, the courts concluded probable cause *did exist* based on the specific facts involved. *See* Appellee

18

Br., at 24 (citing cases). And it is difficult to see how reasonable officers are supposed to know when probable is clearly *lacking* from a collection of cases concluding probable cause *existed*. Galanakis's reliance on these cases cited by the district court to define clearly established law is therefore off base.

The next persuasive authority Galanakis cites is *Scheffler v. Lee*, an unpublished Sixth Circuit case. 752 F. App'x 239 (6th Cir. 2018). There, the court denied qualified immunity to an officer that arrested Scheffler for public intoxication because Scheffler did not stumble, appear unsteady, slur his speech, yell, swear, or act in a threatening manner. *See id.* at 247–248. This case lends no support to Galanakis for several reasons. First, it is an unpublished opinion that is "not precedent." 8th Cir. R. 32.1A. Second, the Kentucky public intoxication statute at issue prohibited intoxication to a degree that endangered or annoyed others whereas Iowa Code section 321J.2 prohibits driving while under the influence drugs or alcohol, period. *Compare Scheffler*, 752 F. App'x at 245 *with* Iowa Code § 321J.2. Finally, unlike this case, *Scheffler* did not involve field sobriety tests, and Scheffler did not exhibit signs of

19

intoxication. *Scheffler*, 752 F. App'x at 247–248. For all these reasons, this case is not helpful to the qualified immunity analysis.

Next, Galanakis cites *Gutierrez v. Kermon*, a Seventh Circuit case. 722 F.3d 1003 (7th Cir. 2013). His reliance on this case is questionable at best because the court dismissed the appeal for lack of jurisdiction. *See id.* at 1014. But to the extent it adds any value to the qualified immunity analysis in this case, it supports reversing the district court because the Seventh Circuit cited "impaired attention" and "failure of field sobriety tests" as among several other indicia of intoxication and explained that not all indicia are necessary to probable cause. *See id.* at 1012. Galanakis failed two field sobriety tests, and his attention appeared to any reasonable officer to be impaired when he could not identify unexpired copies of his registration and proof of insurance. So if anything, *Gutierrez* supports reversing the district court, not affirming it. Galanakis's reliance on this case is simply misplaced.

Next, Galanakis cites *Kent v. Katz*, a Second Circuit case where the court denied qualified immunity to an officer that arrested Kent for driving while intoxicated because only two undisputed facts supported the officer's suspicion that Kent was intoxicated, that Kent had red eyes

and that Kent answered "not very much" to the officer's question about whether Kent had been drinking. 312 F.3d. 568, 570, 576–577 (2d Cir. 2002). Like the other cases cited by Galanakis, *Kent* is not factually similar to this one. Most importantly, *Kent* did not involve failed field sobriety tests because Kent refused to submit to any tests. *Id*. at 571. And unlike Galanakis, he did not struggle with his driver's documents, he did not have odor masking gum or air fresheners, he did not taunt the officer's job performance, and he did not provide odd and inconsistent answers to the officer's questions. *See id*. at 570–571. Although cases do not need to be identical for purposes of the clearly established analysis, *Kent* is plainly too dissimilar to the facts in this case. As a result, it could not have put reasonable officers on notice that arresting Galanakis violated the Fourth Amendment under the circumstances.

Finally, Galanakis cites *Donahue v. Wihongi*, a Tenth Circuit case that, like all the others, lends no support to Galanakis's case. 948 F.3d 1177 (10th Cir. 2020). There, the court concluded an officer had reasonable suspicion to believe that Donahue was intoxicated in violation of Utah's public intoxication statute. *See id*. at 1193. The court did not reach any conclusions about probable cause regarding intoxication. *See*

*id.* at 1186, 1193. In suggesting otherwise, Galanakis neglects the language of the opinion. According to Galanakis, the court concluded that the facts at issue in the case definitively fell short of probable cause to believe Donahue was intoxicated. *See* Appellee Br., at 26. But again, the court did not reach that conclusion, or any other no-probable-cause conclusions. *See id.* at 1186, 1193. The court concluded that the facts at issue supported reasonable suspicion, "*even if* less than what is required for a showing of probable cause," which contradicts Galanakis's assertion that the court found no probable cause. *See id.* at 1193. In any case, the facts involved in *Donahue* are not at all similar to the facts in this case, and it certainly did not put reasonable officers on notice that arresting Galanakis clearly violated the Fourth Amendment.

Galanakis has therefore failed to demonstrate that given the existing precedents, no reasonable officer could believe there was a fair probability or a substantial chance, and therefore probable cause, that Galanakis was intoxicated. As a result, he has not demonstrated a violation of a clearly established Fourth Amendment right, making qualified immunity on his Fourth Amendment unreasonable arrest claim appropriate.

## II. The Critical Error in Galanakis's and the District Court's Analyses is They Improperly Focused on How a Jury Might View the Indicators of Intoxication as Having Innocent Explanations and Then Discounted Them

The critical error in both Galanakis's and the district court's analyses is that rather than focus on how a reasonable officer would view the indicators of intoxication, they hyperfocused on how a jury might view the indicators of intoxication as having innocent explanations and then discounted them in their analyses. This Court has corrected this error before, and it should correct it again in this case.

In *Kelsy v. Ernst*, the Court illustrated the analytical mistake that Galanakis and the district court made. There, the Court analyzed qualified immunity on an excessive force claim where the officer, Ernst, used force after Kelsay appeared to ignore the officer's commands. *See* 933 F.3d at 978, 981. The Court explained that although "there is a factual dispute about whether Kelsay complied with Ernst's command by momentarily stopping and turning around, *the relevant question is not whether Kelsy complied as a factual matter*." *Id.* at 981 (emphasis added). The "relevant question," the Court said, "*is whether a reasonable officer could have believed that Kelsay was not compliant*." *Id.* (emphasis added). And because the Court concluded "a reasonable police officer could expect

23

Kelsay to understand his command to 'get back here' as an order to stop and remain," the Ernst's conclusion that Kelsay failed to comply was objectively reasonable. *See id*.

The Court illustrated the same mistake again in *Brown v. City of St. Louis*. In that case, the Court analyzed qualified immunity on an unreasonable arrest claim where the officers arrested Brown based on their belief that Brown was inciting violence. *See Brown*, 40 F.4th at 902–903. The Court explained that although it was "possible that Brown was not actually inciting violence or intending to incite violence," this was beside the point. *See id*. at 903. The relevant question was whether the officers reasonably believed Brown was inciting violence, even if they were mistaken. *See id*. And because they *did* reasonably believe Brown was inciting violence, they had arguable probable cause to arrest Brown and qualified immunity was appropriate. *See id*.

Here, Galanakis and the district court refused to analyze whether a reasonable officer could conclude Galanakis's failed field sobriety tests, trouble with his documents, and other behavior were indicators of intoxication. Instead, they hyperfocused on whether a jury could find innocent explanations for these things and then discounted or subtracted

24

them from their qualified immunity analysis entirely. This is apparent throughout Galanakis's brief, where he repeatedly asserts that a jury might not view Galanakis's trouble identifying his documents and failed field sobriety tests as indicators of intoxication. It is most apparent, however, in the district court's Order. In its Order, the district court said a jury could conclude the asserted indicators of intoxication, like failed field sobriety tests, "were not present at all" and that "[t]*hose that remain are not enough to establish arguable probable cause.*" App. 469; R. Doc. 77, at 15 (emphasis added). This language plainly shows that the district court conceived of how a jury might view the indicators of intoxication as having innocent explanations and then improperly discounted or subtracted them from the analysis.

As discussed above, under the correct analysis, the district court would have taken the undisputed fact that Galanakis blatantly failed two different field sobriety tests and analyzed whether a reasonable officer could conclude this fact, together with the other circumstances, supported a fair probability or substantial chance that Galanakis was intoxicated given existing precedent. *See Kelsay*, 933 F.3d at 981; *Brown*, 40 F.4th at 902–903. Surely, a reasonable officer could believe that failing

25

two different field sobriety tests in the ways that Galanakis failed his tests, coupled with all the other potential indicators of intoxication, supported at least a fair probability or a substantial chance that Galanakis was intoxicated.

By hyperfocusing on whether a jury could view the indicators of intoxication as susceptible to innocent explanations, Galanakis and the district court not only missed the relevant qualified immunity question, *see supra*, they neglected a foundational probable cause principle: "innocent behavior frequently will provide the basis for a showing of probable cause." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). This principle underscores the impropriety of focusing on whether a jury might conclude Galanakis's failed field sobriety tests and trouble identifying his documents indicated he was intoxicated "as a factual matter." *See Kelsay*, 933 F.3d at 981. Focusing on whether this conduct is ultimately innocent or not, ignores that innocent conduct can easily support a basis for probable cause, and it clouds the relevant qualified immunity inquiry that aims to determine whether an officer's beliefs and conduct were reasonable. *See id.*; *Gates*, 462 U.S. at 243 n.13.

26

Focusing on whether conduct is ultimately innocent or not also incorrectly denies officers qualified immunity whenever they mistakenly believe a person may be intoxicated and there is a conceivable innocent explanation for the perceived indicators of intoxication, no matter how reasonable the officer's mistaken belief. *See Gates*, 462 U.S. at 243 n.13 (explaining that if "innocent behavior" could not provide a basis for probable cause, the effect "would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands").

It is imperative that the Court correct the district court's flawed analysis and reverse the denial of qualified immunity on Galanakis's Fourth Amendment unreasonable arrest claim.

## III. Galanakis and the District Court Made Several Other Errors in Their Analyses that The Court Must Correct

In addition to improperly viewing the indicators of intoxication as susceptible to innocent explanations and discounting them from the qualified immunity analysis, both Galanakis and the district court made several other errors that infected their conclusions.

27

### A. Galanakis Incorrectly Contends that the Question of Whether Officer Winters and Lieutenant Wing Reasonably Concluded Probable Cause Existed Requires a Credibility Assessment

Galanakis incorrectly tries to avoid qualified immunity and summary judgment by asserting "[w]hether Officer Winters observed anything giving rise to probable cause is disputed requiring a credibility assessment to decide." Appellee Br., at 15. This is plainly wrong for two reasons.

First, nearly all the facts Officer Winters and Lieutenant Wing rely on to support qualified immunity are undisputed and included in the officer body camera recordings that are part of the record in this case. *See* App. 298; R. Doc. 40-3, at 6; App. 427; R. Doc. 53-3, at 78. These facts include Galanakis's odor masking gum and air fresheners, Galanakis's handling of his documents, his failed field sobriety tests, and his answers to Officer Winters's questions. *See id*. Although the parties make arguments as to whether these facts ultimately amount to probable cause, nothing about these facts requires the Court to judge anyone's credibility.

Second, the question central to the qualified immunity analysis in this case, i.e., whether it was objectively reasonable to believe the

circumstances supported at least a fair probability or a substantial chance that Galanakis was intoxicated, is a question of law for the Court to review *de novo*. *See Kelsay*, 933 F.3d at 981 ("Whether the officer's conclusion was reasonable, or whether he was 'reasonably unreasonable' for purposes of qualified immunity, are question of law, not fact.") (internal citation omitted). It is not a credibility question for a jury. *See id*. That is, the parties' dispute as to the reasonable conclusions that can be drawn from the underlying facts present an appropriate question of law for the Court to decide on appeal. *See id*. It does not, as Galanakis summarily argues, require a credibility assessment.

Accordingly, the Court should dismiss Galanakis's contention that Officer Winters's and Lieutenant Wing's assertion of qualified immunity requires a credibility assessment.

## B. Galanakis and the District Court Overemphasized the PBT Result

For some reason, Galanakis and the district court gave Galanakis's 0.00 PBT result substantial weight in their analyses. Despite pointing out the apparent flaw in this, Galanakis continues to emphasize his 0.00 PBT result. Appellants' Br., at 54–55; Appellee Br., at 6, 13, 23. Galanakis's emphasis on this fact, however, is misguided.

29

Continuing to emphasize Galanakis's 0.00 PBT result is misguided because intoxication for purposes of Iowa Code section 321J.2 can be caused by a variety of substances, and a 0.00 PBT result eliminates only alcohol as a possibility. *See* Iowa Code § 321J.1(4) & 124.204. For example, in *Braun v. Village of Palatine*, the Seventh Circuit explained that "even if we assume that the Breathalyzer result should have informed Officer Licari that Braun had no alcohol in his system, there was still probable cause to believe that Braun had committed the crime of driving under the influence of drugs or another intoxicating substance." 56 F.4th 542, 550 (7th Cir. 2022). This, the court said, is because the "signs of intoxication could have stemmed from alcohol, drugs, or other intoxicating substances." *Id*. The same is true here. Galanakis's 0.00 PBT result did not nothing eliminate the reasonable belief that his failed field sobriety tests and other conduct indicated he may be intoxicated by a substance other than alcohol. *See id*.

## C. Galanakis Continues to Improperly Rely on Alleged Subjective Motivations and Post-Arrest Facts to Oppose Qualified Immunity and Summary Judgment

In their initial brief, Officer Winters, Lieutenant Wing, and the City of Newton pointed out that contrary to controlling precedent, both the

30

district court and Galanakis improperly relied on alleged subjective motivations and post-arrest facts to avoid qualified immunity. Appellant Br., at 55–56. Yet, Galanakis ignored these authorities continues to improperly rely on subjective motivations and post-arrest facts.

It is well established that "courts may not delve into the officers' subjective motivations for their actions." *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017). And it is also well established that probable cause "is determined at the moment the arrest is made, 'any later developed facts are irrelevant to the probable cause analysis.'" *Id.* (quoting *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016)).

Despite having Officer Winters, Lieutenant Wing, and the City of Newton point out that alleged subjective motivations and post-arrest facts are not relevant, Galanakis continues to cite several of these things in his brief. *See* Appellee Br., at 3, 8, 15, 23. For example, like the district court, Galanakis repeatedly alleges Officer Winters manufactured reasons for Galanakis's arrest, that Lieutenant Wing later second-guessed Officer Winters, and that Officer Winters is somehow not qualified to recognize intoxication. These are irrelevant subjective

31

thoughts, motivations, and characteristics that do not belong in the probable cause or qualified immunity analysis, which is objective. *See Hosea*, 867 F.3d at 955. Galanakis also alleges that Officer Winters was later counseled for poor communication, that Galanakis was ultimately released without charges, and that Galanakis was not ultimately found to be intoxicated. Like subjective motivations, these are irrelevant post-arrest facts that do not belong in the probable cause or qualified immunity analysis. *See id*.

The Court should dismiss Galanakis's attempts to improperly highlight these subjective and post-arrest circumstances, and the Court should correct the district court's reliance on them.

### D. Galanakis Incorrectly Argues that Officer Winters and Lieutenant Wing are Interpreting the Facts in Their Favor

Officer Winters and Lieutenant Wing do not, as Galanakis argues, need to interpret the facts in their favor in order to show they are entitled to qualified immunity. Nor do they.

As mentioned above, nearly all the facts Officer Winters and Lieutenant Wing rely on to support qualified immunity are undisputed and included in the officer body camera recordings that are part of the

32

record in this case. *See* App. 298; R. Doc. 40-3, at 6; App. 427; R. Doc. 53-3, at 78. For instance, there is no dispute that when Officer Winters and Lieutenant Wing approached Galanakis, he was chewing gum and had at least three air fresheners in his car. App. 457; R. Doc. 77, at 3; App. 298, at 16:25; R. Doc. 4-3, at 6. There is also no dispute that Galanakis asked Officer Winters for help identifying his registration and proof of insurance. App. 457; R. Doc. 77, at 3; App. 298, at 16:32–17:25; R. Doc. 4-3, at 6. Nor is there any dispute that Galanakis failed two different field sobriety tests in several ways, that he taunted Officer Winters, or that he oddly paused for 8–10 seconds before responding "I do not remember that" to Officer Winters's question about the last time Galanakis smoked weed. App. 458–461; R. Doc. 77, at 4–7. These facts are all plainly apparent from the record, particularly the officer body camera recordings. And Officer Winters and Lieutenant Wing do not need to bend them in their favor in order to achieve qualified immunity.

Of course, the parties ultimately dispute whether a reasonable officer could conclude probable cause existed to arrest Galanakis *based on these facts*. But by arguing it was objectively reasonable for Officer Winters and Lieutenant Wing to conclude probable cause existed, Officer

33

Winters and Lieutenant Wing are not improperly interpreting the facts of the case in their favor, as Galanakis contends. They are simply arguing an important question of the law that this Court may appropriately review *de novo*. *See Kelsay*, 933 F.3d at 981; *Brown*, 40 F.3d at 903.

The Court should therefore disregard Galanakis's argument that Officer Winters and Lieutenant Wing are viewing the facts in their favor.

## IV. Galanakis Failed to Address the Argument that the District Court's View of Some Material Facts Blatantly Contradicts the Record

In their initial brief, Officer Winters, Lieutenant Wing, and the City of Newton argued that the district court's view of two facts blatantly contradicts the record. Appellants' Br., at 72. Other than summarily arguing that he disagrees, Galanakis did not meaningfully address this argument. That is because the district court's view of these two facts is indefensible.

In its Order, the district court determined that Galanakis failed his field sobriety tests because he was "distracted" by "bickering" and "interrupting." App. 470; R. Doc. 77, at 16. The district court also determined that Galanakis had trouble identifying unexpired versions of his registration and insurance only because he kept expired versions and

34

that Galanakis "promptly" recognized the expired versions and "told Winters as much." App. 469; R. Doc. 77, at 15. Officer Winters, Lieutenant Wing, and the City of Newton implore the Court to watch the officer body camera recordings and then watch them again. When the recordings are analyzed, the district courts view of these facts blatantly contradicts the videos. Importantly, Galanakis failed to meaningfully address this argument in his brief. Instead, he summarily disagreed and asserted the district court's view was correct.

When these facts are appropriately viewed as depicted by the video recordings, Officer Winters and Lieutenant Wing are entitled to qualified immunity on Galanakis's Fourth Amendment unreasonable arrest claim and his Iowa false arrest claim.

## CONCLUSION

The Court should reverse the district court's denial of summary judgment on Galanakis's Fourth Amendment and false arrest claims based on federal and state statutory qualified immunity.

Appellate Case: 24-1275   Page: 35   Date Filed: 07/23/2024 Entry ID: 5416250

Dated: July 22, 2024          Respectfully submitted,

CITY OF NEWTON, IOWA, NATHAN WINTERS, and CHRISTOPHER WING, Appellants-Defendants,

By: _____/s/ Nicholas F. Miller_____
Nicholas F. Miller, AT0015361

**BRICK GENTRY, P.C.**
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
T: (515) 274-1450
F: (515) 274-1488
nick.miller@brickgentrylaw.com

36

## CERTIFICATE OF COMPLIANCE

1.　　This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,023 words.

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Century Schoolbook font.

3.　　This brief has been scanned for viruses, and it is virus free.

*/s/ Nicholas F. Miller*
Nicholas F. Miller, AT0015361

**BRICK GENTRY, P.C.**
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
T: (515) 274-1450
F: (515) 274-1488
nick.miller@brickgentrylaw.com

Appellate Case: 24-1275　　Page: 37　　Date Filed: 07/23/2024 Entry ID: 5416250

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Nicholas F. Miller*
Nicholas F. Miller, AT0015361
**BRICK GENTRY, P.C.**
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
T: (515) 274-1450
F: (515) 274-1488
nick.miller@brickgentrylaw.com

Appellate Case: 24-1275    Page: 38    Date Filed: 07/23/2024 Entry ID: 5416250