# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1275

_____

Tayvin Galanakis

*Plaintiff - Appellee*

v.

City of Newton, Iowa

*Defendant - Appellant*

Rob Burdess

*Defendant*

Nathan Winters; Christopher Wing, individually and in their official capacities
with the Newton Police Department

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: November 20, 2024
Filed: April 17, 2025

_____

Before COLLOTON, Chief Judge, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Tayvin Galanakis sued Officers Nathan Winters and Christopher Wing under 42 U.S.C. § 1983 and Iowa law, alleging they arrested him without probable cause. Galanakis also brought federal and state claims against the City of Newton, Iowa (City). The district court[1] denied summary judgment in part, determining that the officers were not entitled to qualified immunity or state statutory immunity, and the City was subject to vicarious liability on a surviving state-law claim. The officers appeal, and having jurisdiction under 28 U.S.C. § 1291, we affirm in part and dismiss in part.

I.

In reviewing a district court's denial of qualified immunity, "we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not 'blatantly contradicted by the record.'" Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (quoting Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015)). Where possible, we also look to video evidence plainly depicting the incident, see Meehan v. Thompson, 763 F.3d 936, 938 (8th Cir. 2014) (citing Scott v. Harris, 550 U.S. 372, 380–81 (2007)), and "we view the record and make inferences in [Galanakis's] favor," Dunn v. Does 1-22, 116 F.4th 737, 745 (8th Cir. 2024).

On August 28, 2022, a little after midnight, Winters and Wing saw Galanakis driving with his high beams on and initiated a traffic stop. Otherwise, there is no suggestion that Galanakis was driving erratically. Winters walked up to the driver's-side window, and Wing approached the passenger window. Galanakis was chewing gum, and there were multiple air fresheners hanging from the car's rearview mirror. Winters asked Galanakis a series of questions, which Galanakis answered while

_____

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

-2-

rummaging through the glove compartment in search of his registration and insurance documents. One question was whether Galanakis had been drinking, and Galanakis answered no. Galanakis had some difficulty finding the right documents, but ultimately provided what Winters requested.

Winters asked Galanakis to accompany him to his patrol vehicle, where Winters looked up Galanakis's information. During their conversation, Winters again asked Galanakis how much he had had to drink. Galanakis repeated "none," and he asked to take a breathalyzer test. Instead, Winters asked Galanakis to perform a set of field sobriety tests, and they both exited the patrol car. Over the course of more than ten minutes, Winters had Galanakis: follow Winters's finger as he moved it back and forth in front of Galanakis's face; perform a walk-and-turn test; perform a one-leg stand test; tilt his head back and follow Winters's finger with his eyes; tilt his head back, close his eyes, and try to estimate when thirty seconds had passed; and perform a finger-to-nose test, in which Galanakis closed his eyes and touched the tip of his nose with whichever finger (right or left) Winters instructed. Throughout, Wing stood by watching. On the walk-and-turn test, Galanakis took too many steps and failed to follow Winters's instructions to count out loud and turn a certain way; Galanakis also did not count out loud during the one-leg stand test in the way Winters had instructed. Otherwise, he performed the tests without issue.[2]

Galanakis again asked to take a breathalyzer test. Winters obliged, and the test revealed that Galanakis had a blood alcohol content of 0.00. Winters then read Galanakis his Miranda[3] rights and immediately asked him when he had last smoked marijuana. After eight to ten seconds of silence, Galanakis said, "I do not remember

---

[2]Winters argues that Galanakis manifested other physical signs of impairment during the sobriety tests, but the district court concluded that the video evidence either contradicted or arguably contradicted Winters's account. We lack jurisdiction to resolve these factual disputes. See Estate of Nash v. Folsom, 92 F.4th 746, 755 (8th Cir. 2024).

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

-3-

that." Galanakis insisted that he had not smoked that night. He explained that, as a member of the William Penn University football team, he was drug-tested every week; if he smoked, he would get kicked off the team. Winters asked whether Galanakis would come to the station and submit to a drug influence evaluation. Galanakis agreed at first, but after Winters arranged for the evaluation, Galanakis told Winters he wanted to go home instead. At that point, Winters arrested Galanakis for driving while intoxicated. A drug evaluation conducted at the police station concluded that Galanakis was not under the influence of any illicit substances, and he was released.

Galanakis sued Winters and Wing in Iowa state court, bringing a state-law false arrest claim, a claim under the Iowa Constitution, and a claim under 42 U.S.C. § 1983 for arrest without probable cause; he also brought a state-law *respondeat superior* claim against the City, as well as Monell[4] and state-law negligent supervision claims against the City and its police chief. The defendants removed the action, and later moved for summary judgment on the grounds that the officers were entitled to qualified immunity on the § 1983 claim and state statutory immunity on the false arrest claim. The defendants also sought summary judgment on the claims against the City. The district court denied summary judgment with respect to the § 1983 and false arrest claims against Winters and Wing, as well as the *respondeat superior* claim against the City predicated on Galanakis's false arrest claim. Defendants appeal, arguing that qualified immunity and state statutory immunity protected the officers—and, as to the false arrest claim, the City—from suit.

II.

This court has "limited jurisdiction to review" a district court's denial of qualified immunity. Dunn, 116 F.4th at 745 (citing Jackson v. Gutzmer, 866 F.3d 969, 975 (8th Cir. 2017)). We answer only "the legal question whether the particular facts support the . . . claim that [defendants] violated clearly established law."

---

[4]Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Appellate Case: 24-1275     Page: 4     Date Filed: 04/17/2025 Entry ID: 5507210

Quraishi v. St. Charles County, 986 F.3d 831, 835 (8th Cir. 2021) (citing Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs, 931 F.3d 672, 680 (8th Cir. 2019)). In doing so, "we are 'constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision.'" Johnson v. McCarver, 942 F.3d 405, 409 (8th Cir. 2019) (quoting Thompson, 800 F.3d at 983).

Our review is similarly limited when reviewing denials of official immunity under state law. Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019). However, we only "have jurisdiction over pendent claims if they are 'inextricably intertwined' with [the] qualified immunity claim" raised on interlocutory appeal, as is the case when "resolution of the qualified immunity claim 'necessarily resolves the pendent claim[s] as well.'" Muir v. Decatur County, 917 F.3d 1050, 1053 (8th Cir. 2019) (quoting Shannon v. Koehler, 616 F.3d 855, 866 (8th Cir. 2010)).

A.

Winters and Wing[5] first challenge the district court's denial of qualified immunity on Galanakis's Fourth Amendment claim. "An official is not entitled to qualified immunity if (1) the plaintiff demonstrates the violation of a constitutional right, and (2) that right was 'clearly established' at the time of the official's alleged wrongdoing." Kuessner v. Wooten, 987 F.3d 752, 755 (8th Cir. 2021) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). For a right to be clearly established, its "contours . . . must be sufficiently clear that a reasonable official would [have understood] that what he is doing violates that right." Quraishi, 986 F.3d at 835 (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

---

[5]Typically, "qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." Bulfin v. Rainwater, 104 F.4th 1032, 1038 (8th Cir. 2024) (quoting Bloodworth v. Kan. City Bd. of Police Comm'rs, 89 F.4th 614, 624 (8th Cir. 2023)). However, the district court found that Winters and Wing moved for qualified immunity solely on the grounds that they had arguable probable cause to arrest Galanakis, and Wing had developed neither facts nor argument to support an individualized determination of his liability. Defendants do not challenge that finding on appeal.

-5-

"The Fourth Amendment includes the right to be free from arrest without probable cause." Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). To determine whether probable cause exists, courts look to "the events leading up to the arrest" and "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." District of Columbia v. Wesby, 583 U.S. 48, 56–57 (2018) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). The subjective intent of the officer is "irrelevant to the existence of probable cause." United States v. Demilia, 771 F.3d 1051, 1054 (8th Cir. 2014) (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)).

"[E]ven if an officer arrests an individual without *actual* probable cause—in violation of the Constitution—he has not violated that individual's 'clearly established' rights for qualified immunity purposes if he nevertheless had *arguable* probable cause to make the arrest." Brown v. City of St. Louis, 40 F.4th 895, 901 (8th Cir. 2022) (quotation omitted). "Arguable probable cause exists when 'an officer mistakenly arrests a suspect believing [the arrest] is based in probable cause if the mistake is "objectively reasonable."'" Nieters v. Holtan, 83 F.4th 1099, 1106 (8th Cir. 2023) (quoting Ehlers v. City of Rapid City, 846 F.3d 1002, 1009 (8th Cir. 2017)). In turn, we look to "the totality of the circumstances to determine if arguable probable cause existed," id. at 1107, asking whether "a reasonable officer" could reasonably but mistakenly "conclude . . . that there was a 'substantial chance of criminal activity,'" Wesby, 583 U.S. at 61, 65 (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)).

On appeal, Winters and Wing argue they are entitled to qualified immunity because they had arguable probable cause to arrest Galanakis for driving while under the influence of marijuana.[6] Iowa's Operating While Intoxicated offense (OWI) prohibits driving "[w]hile under the influence of an alcoholic beverage or other drug

---

[6]Much of the stop appeared oriented toward the possibility that Galanakis was intoxicated by alcohol. However, defendants concede that Galanakis's performance on the breathalyzer test "eliminated alcohol as the source of intoxication."

-6-

or a combination of such substances." Iowa Code § 321J.2(1). Officers lack arguable probable cause to arrest for such intoxication offenses when a suspect is "not *visibly* intoxicated" and "neither his speech nor his actions" suggest intoxication. Lambert, 187 F.3d at 935. Consistent with this, Iowa courts[7] have credited the following indicia of intoxication, in varying combinations, to support probable cause for OWI arrests: the odor of alcohol or marijuana on the driver; slurred speech; erratic driving; bloodshot or watery eyes; an unstable gait; and refusing to take a breathalyzer, do field sobriety tests, or otherwise cooperate with police. See State v. Morgan, 877 N.W.2d 133, 137 (Iowa Ct. App. 2016) ("[C]ommon indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech, and an uncooperative attitude." (alteration in original) (citation omitted)); see also State v. Warren, 955 N.W.2d 848, 866 (Iowa 2021) (odor, bloodshot or watery eyes); State v. McIver, 858 N.W.2d 699, 703 (Iowa 2015) (erratic driving); State v. Stevens, 394 N.W.2d 388, 391–92 (Iowa 1986) (odor, unstable gait, failed "dexterity tests").

When assessing arguable probable cause, we are tasked with looking at "the whole picture." Wesby, 583 U.S. at 60 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)); see also Nieters, 83 F.4th at 1107 ("[W]e may not disregard exculpatory evidence when considering the totality of the circumstances to determine if arguable probable cause existed."). We avoid a "divide-and-conquer approach" to the facts and instead weigh "all of the surrounding circumstances" in assessing whether the officers' belief that probable cause existed was reasonable. Wesby, 583 U.S. at 61–62 (citations omitted). Doing so here, and accepting the facts found by the district court, no officer could reasonably conclude that there was a

---

[7]Here, we look to Iowa law for guideposts as to what officers may credit toward arresting someone for Iowa Code § 321J.2(1). See Kuessner, 987 F.3d at 756 (looking to state cases to delineate signs of intoxication amounting to arguable probable cause); Evans v. Cabot Sch. Dist., 114 F.4th 946, 955 (8th Cir. 2024) (doing the same for state disorderly conduct offense); see also Wesby, 583 U.S. at 63 ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." (quotations omitted)).

Appellate Case: 24-1275   Page: 7   Date Filed: 04/17/2025 Entry ID: 5507210

substantial chance that Galanakis was under the influence of marijuana. Galanakis evinced almost no indicia of intoxication: no erratic driving; no odor of marijuana; no watery or bloodshot eyes; no staggering or physical instability; no refusal to take sobriety tests—rather, he twice asked to take a breathalyzer test. And he denied drinking alcohol or smoking marijuana that day or night. Moreover, Galanakis's movements and behavior captured on Winters's body camera footage suggest the opposite of intoxication. As the district court found, and as the footage shows, "Galanakis was moving confidently and directing subtle and not-so-subtle verbal jabs at Winters in a manner that would have been difficult for an impaired person."

Defendants point to a sampling of Galanakis's actions and statements during the entire course of the stop and argue that these support a reasonable inference that there was a "substantial chance" he was intoxicated. Wesby, 583 U.S. at 61 (quotation omitted). They cite the following undisputed facts: driving with high beams on; air fresheners in the car and gum chewing; Galanakis's initial trouble finding his documentation; Galanakis's failure to fully follow Winters's instructions on two of the five field sobriety tests; four arguably inconsistent statements or misstatements; and the eight-to-ten-second pause before Galanakis answered that he could not remember when he last smoked marijuana.

Weighed against the totality of the circumstances—namely, video of a lengthy stop in which Galanakis registers almost no outward indication of intoxication—no objectively reasonable officer could conclude that these isolated actions amounted to arguable probable cause to arrest Galanakis. Galanakis's traffic violation, the air fresheners, and his brief difficulty finding documentation while simultaneously answering Winters's questions are minimally suggestive of impairment. Cf. State v. Tague, 676 N.W.2d 197, 205–06 (Iowa 2004) ("[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road [was] sufficient [reason] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of [its] privacy." (alterations in original) (quoting United States v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993))); Saunders v. Comm'r of Pub. Safety, 226 N.W.2d 19, 21–22 (Iowa 1975) (in upholding license revocation,

Appellate Case: 24-1275     Page: 8     Date Filed: 04/17/2025 Entry ID: 5507210

acknowledging driver's "difficulty in producing his driver's license" was one factor among several—including driver's admission to having had three or four beers, "the smell of alcohol on his breath," erratic driving, and unsteady walking—to support "reasonable grounds" he had driven under the influence). That Galanakis did not completely follow Winters's instructions on two of the sobriety tests—taking too many steps, and not turning or counting out loud in the ways instructed—also lends weak support for the inference that Galanakis was intoxicated. Cf. State v. Wenzel, 987 N.W.2d 473, 483 (Iowa Ct. App. 2022) (noting that "marijuana diminishes a person's temporal and spatial judgment, but the Standard Field Sobriety Test does not measure those effects" (quoting State v. Childs, 898 N.W.2d 177, 184 (Iowa 2017)).

The officers also rely on purportedly inconsistent statements[8] Galanakis made during the stop to support arguable probable cause for arrest. But the district court did not find that Galanakis had made inconsistent statements, and to the contrary, it found that Galanakis's answers to Winters's questions were detailed and coherent. The officers do not contend that this conclusion is "blatantly contradicted" by the

---

[8]For example, Galanakis said he had a taillight out and immediately corrected to "one of the bulbs up front." And when Winters accused Galanakis of having red eyes, Galanakis said, "I got contacts"; later, when Winters asked whether he was presently wearing contacts, Galanakis said that he had taken them out earlier that night at his friend's house because he was allergic to his friend's dog, which made his eyes "dried up and watery." The district court did not find Galanakis's statements to be inconsistent. Additionally, whether Galanakis's eyes were actually red is disputed and beyond the scope of our review. See Folsom, 92 F.4th at 755.

Also beyond our review is Galanakis's statement that he was drug tested each Friday as a member of William Penn University's football team, a statement the evidence later showed was incorrect. This statement is only relevant if Winters was aware that it was not true before he arrested Galanakis, and the district court found there was no contemporaneous evidence that Winters knew Galanakis's statement to be false. See Lambert, 187 F.3d at 935 n.6 ("The relevant inquiry is whether the arresting officers had probable cause to arrest [the defendant] at the time of the arrest, not whether the officers' decision to arrest [the defendant] can be justified by information learned after the arrest.").

-9-

record, Burnikel, 886 F.3d at 709 (quotation omitted), and, when considering the video evidence in full, we agree that it is not.

Finally, defendants note that Galanakis "oddly" paused before answering Winters's question of when he had last smoked marijuana. It is true that evasive behavior during a stop can be relevant to an officer's assessment of probable cause. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (noting that officers may take evasiveness into account). But here, defendants do not explain how or why a reasonable officer would find Galanakis's pause to be odd or evasive. They also ignore vital context: Galanakis's pause came immediately after Winters had Mirandized him. The significance a reasonable officer could attribute to a defendant's silence right after being told that anything he says can and will be used against him in a court of law is attenuated at best. See Doyle v. Ohio, 426 U.S. 610, 618 (1976) (concluding it was "fundamentally unfair" to use defendant's post-Miranda silence as evidence of guilt); see also Wesby, 583 U.S. at 57 (noting probable cause inquiry is a circumstance-dependent, "fluid concept" (quoting Gates, 462 U.S. at 232)).

By the time Galanakis was arrested, no objectively reasonable officer could have concluded that there was a substantial chance Galanakis had driven while under the influence of marijuana. The video shows that Galanakis was not visibly intoxicated, and "neither his speech nor his actions" suggested he was impaired. Lambert, 187 F.3d at 935; see also id. at 933–35 (affirming denial of qualified immunity where officers, called to the scene for an attempted burglary, arrested suspect for public intoxication who was not visibly intoxicated and "was engaged in friendly conversation" with the supposed victim). The facts to which the officers point reflect at most a "divide-and-conquer approach"—a subset of Galanakis's actions that would not suggest a substantial chance of marijuana intoxication to any reasonable officer when observed in the context of the stop as a whole. Because, on the facts that we must assume for purposes of this appeal, "the officers subjected [Galanakis] to [a] warrantless arrest[] unsupported by arguable probable cause . . . they violated [his] clearly established rights." Dunn, 116 F.4th at 751; see also

-10-

Webster v. Westlake, 41 F.4th 1004, 1013 (8th Cir. 2022) (finding officers' warrantless arrest violated plaintiff's clearly established right "[b]ecause the detectives did not have arguable probable cause to arrest [her]"). We affirm the district court's denial of qualified immunity on Galanakis's Fourth Amendment claim.

B.

The defendants also appeal the district court's denial of summary judgment on Galanakis's state-law claims. We may exercise limited pendent jurisdiction over "claims that are 'inextricably intertwined' with interlocutory appeals concerning the defense of qualified immunity," permitted they are "'coterminous with, or subsumed in' our qualified immunity analysis." Clinton v. Garrett, 49 F.4th 1132, 1139 (8th Cir. 2022) (quoting Veneklase v. City of Fargo, 78 F.3d 1264, 1269–70 (8th Cir. 1996)).

Independent of federal qualified immunity, Iowa officers enjoy statutory immunity where "[t]he right . . . secured by law was not clearly established at the time of the alleged deprivation, or at the time of the alleged deprivation the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law." Iowa Code § 670.4A(1)(a). The parties appear to agree that Iowa law follows the same two-step approach applicable to federal qualified immunity. However, on appeal, the defendants suggest that Iowa's false arrest law presents a different liability standard than the Fourth Amendment. See Children v. Burton, 331 N.W.2d 673, 680 (Iowa 1983) (noting that in civil false arrest cases, "[i]f the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach"). Without clarification that "resolution of [Galanakis's] qualified immunity claim 'necessarily resolves the pendent claim[s] as well,'" we decline to exercise jurisdiction and dismiss the interlocutory appeal as to the state-law claims. Muir, 917 F.3d at 1053

-11-

(quoting <u>Shannon</u>, 616 F.3d at 866); <u>see also</u> <u>Clinton</u>, 49 F.4th at 1139 (citing differing state liability standard in denying pendent jurisdiction).

III.

We affirm the judgment of the district court as to Galanakis's Fourth Amendment claim, and otherwise dismiss defendants' appeal.

_____

Appellate Case: 24-1275     Page: 12     Date Filed: 04/17/2025 Entry ID: 5507210